# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 1, 2011

Lyle W. Cayce
Clerk

No. 10-50719
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SEALED DEFENDANT,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas
No. 7:10-CR-6-1

Before DAVIS, SMITH, and SOUTHWICK, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

The defendant, a juvenile whom we call A.S., appeals an order granting the government's motion to transfer him to adult status for criminal prosecution.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

We affirm.

## I.

A.S.'s father, Armando, and his uncle, Francisco, worked for Jose "Chaco" Gardea, a drug trafficker. Armando and Francisco had a dispute with Gardea and another drug trafficker, Steven Soto, because Soto had recently usurped Armando's position as Gardea's right-hand man. Additionally, Armando believed that Gardea had failed to compensate him for storing Gardea's illegal drugs.

A.S., Armando, Francisco, A.S.'s fifteen-year-old brother, and a seventeen-year-old friend laid an ambush for Gardea and Soto. They waited in an alley behind Armando's and Francisco's adjacent houses. When Gardea and Soto arrived and began exiting their jeep, the five ambushers opened fire with about 160-180 rounds from assault rifles and shotguns. Gardea died of multiple wounds, but Soto managed to survive the initial barrage by climbing into the back seat of the jeep. Armando walked up to the jeep and fired two shots into Soto's head. The five assailants then left the scene. At the time, A.S. was 17 years, 8 months old.

A.S. was arrested and charged with two counts of juvenile delinquency pursuant to 18 U.S.C. § 5032. Count 1 alleged that A.S. fired a weapon into a group of two or more persons and killed them in furtherance of a major drug offense and with the intent to intimidate, harass, injure, and maim, which would have been a crime in violation of 18 U.S.C. § 36 if he were an adult. Count 2 alleged that A.S. used a firearm to cause the deaths of Gardea and Soto in furtherance of the crime of violence alleged in Count 1, which would have been a crime in violation of 18 U.S.C. § 924(c) and (j) if he were an adult.

The government filed a motion to transfer A.S. to adult status for criminal prosecution. After an evidentiary hearing, the district court the granted the motion.

II.

We review "factual findings made by a district court considering a motion to transfer a juvenile to adult status for clear error" and "the overall decision to grant or deny the transfer motion for abuse of discretion." United States v. Sealed Appellant 1, 591 F.3d 812, 820 (5th Cir. 2009). "A finding of fact is clearly erroneous when although there is enough evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." Id.

In evaluating a requested transfer, a district court must consider the six factors outlined in 18 U.S.C. § 5032: (1) the age and social background of the juvenile; (2) the nature of the alleged offense; (3) the extent and nature of the juvenile's delinquency record; (4) his present intellectual development and psychological maturity; (5) the nature of past treatment efforts and the juvenile's response to such efforts; and (6) the availability of programs designed to treat his behavioral problems. Not all factors must be weighted equally; "the seriousness of the offense in particular may be given more weight than other factors in determining whether there is a realistic chance of rehabilitation and hence whether transfer is appropriate." Sealed Appellant 1, 591 F.3d at 820 (quotations and citation omitted).

A.

The district court conducted a thorough analysis, making detailed factual findings on all six factors—as required by the statute. The court properly concluded that factors (1), (2), (4), and (6) weighed in favor of transfer and that factors (3) and (5) did not.

As to the first factor, the age of the juvenile, A.S. was only four months away from his eighteenth birthday. Regardless of his troubled upbringing, his age weighs heavily in favor of a transfer.

The second factor, the nature of the offense, weighs most heavily in favor of a transfer. The alleged crimes were, as the district court described them, "horrific." A.S. and his compatriots lied in wait for two unarmed victims and killed them in a barrage of bullets. That was a shocking act, regardless of A.S.'s age or motivations.

The district court also found that the fourth factor, the juvenile's present intellectual development and psychological maturity, weighed in favor of a transfer. A.S. was evaluated by two psychologists, who concluded that his level of maturity was similar to that of an adult. One psychologist determined his IQ to be 103, and the other found it to be 95, both within the average range. Both psychologists determined that A.S. did not suffer from mental illness or mental retardation.

Finally, the court found that the sixth factor, the availability of programs designed to treat the juvenile's behavioral problems, weighed in favor of a transfer. Evidence showed that A.S. had aged out of the Texas state juvenile program, because he was already over eighteen, and the nature of his offense required that he be held in a secure facility.[1] The testimony was that there was no place in Texas where he could receive treatment as a juvenile. A psychologist also testified that A.S. would be better served in an adult facility.

On appeal, however, A.S. argues that the district court actually failed to consider the sixth factor. He contends that the court erred by evaluating the juvenile facilities available within the state system instead of looking to the opportunities available in the federal system. A.S. appears to place great emphasis on the fact that, although the Texas juvenile system provides secure detention

---

[1] According to the testimony, to be considered a juvenile in the Texas system, the incarcerated individual must be under 18. A.S., however, would have to be held in a secure facility given the violent nature of his offense. The juvenile authority in Texas will hold individuals in these secure detention facilities until they are 19, but at that point they would be transferred to the adult detention system. A.S. will soon be 19, so those secure facilities do not constitute a viable option as a juvenile treatment facility for him.

only for persons under the age of 19, the federal system includes programs that are available until he turns 21.

A.S. has a fundamental misunderstanding of the federal juvenile detention system. As the district court found, the federal government contracts with state, local, and private entities to house, and provide treatment for, juveniles. Furthermore, by statute, an effort must be made to "commit a juvenile to a foster home or community-based facility located in or near his home community." See 18 U.S.C. § 5039. This is why the district court considered the evidence of the Texas juvenile system when it was ruling on this motion—the Texas state juvenile system was where the federal government would attempt to place A.S. if he were committed for juvenile detention.[2]

Perhaps the district court could have given some consideration to the feasibility of committing A.S. to a facility within a system that would have a place for someone of his age, but given the statutory goal of placing a juvenile in a facility near his come community, it was not clearly erroneous for the court to find that there were no available programs to treat A.S.'s behavioral problems.[3]

---

[2] A.S. also argues that a transfer must be denied if the government fails to address any one of the six factors. See United States v. John Doe, 94 F.3d 532 (9th Cir. 1996); United States v. A.J.M., 685 F.Supp. 1192 (D.N.M. 1988). This circuit has not yet decided that issue, although the fact that the statute requires the consideration of six factors suggests that evidence must be before the district court on those six; otherwise, there is little for the court to "consider." Whether the government is still required to present evidence on a factor where there is already evidence on that factor from another source is an open question in this circuit. It is not necessary, however, to decide that issue here. Irrespective of whether the government was required to produce evidence on all six factors, it presented at least some evidence on all six, including the availability of juvenile treatment programs near A.S.'s home community.

[3] We assume arguendo that the court did not consider the availability of juvenile detention programs outside A.S.'s home community. There is evidence in the record, however, that the court actually did consider the availability of other programs. During the hearing on the motion, the court stated that (1) "that may be more of an issue for the Court to sort that out," and (2) the court had obtained a directory of Bureau of Prison contract juvenile facilities across the United States. Thus, there was evidence regarding the availability of all possible juvenile treatment programs. This provides even more support for the conclusion that the court did not clearly err in finding that there were no available treatment programs for A.S.

To summarize: We agree with the district court that four of the six factors weigh in favor of a transfer to adult prosecution. Evidence on all six factors was considered, but the district court properly placed great emphasis on the horrific nature of the offense and A.S.'s age at the time of the offense. Given the factual findings on those two issues, as well as A.S.'s present intellectual development and maturity and the unavailability of programs designed to treat his behavioral problems, it was not an abuse of discretion to grant the government's motion to transfer A.S. to adult prosecution.

AFFIRMED.